# Exhibit 3

December 3, 2018

Tom Santoni
3611 St. Tropez Way
Houston, TX  77082

**The State Group Holdings Partners LP**

Dear Mr. Santoni:

In connection with the equity investment by Tom Santoni in The State Group Holdings Partners LP, an Ontario limited partnership (the "**Partnership**"), the Partnership, BW Cayman AIV IV, L.P. ("**BWF LP**"), and YP Builders Limited Partnership ("**YPF LP**"), have agreed to provide Tom Santoni with this letter agreement (this "**Letter Agreement**"), which supplements the terms and provisions of the subscription agreement of Tom Santoni dated December 3, 2018 (the "**Subscription Agreement**") and the Partnership's amended and restated limited partnership agreement dated April 3, 2018, as amended from time to time (the "**Partnership Agreement**"). All other terms relating to Tom Santoni's investment in the Partnership which are not expressly provided for in this Letter Agreement shall be as set out in the Partnership Agreement.

1. <u>Defined Terms</u>. Each capitalized term used and not defined in this Letter Agreement shall have the meaning ascribed to such term in the Partnership Agreement.

    (a) "**Cause**" shall mean, with respect to Tom Santoni, (i) "Cause" as such term is defined in the Tom Santoni Employment Agreement; or (ii) in the absence of such definition: (A) the commission of a felony or other crime involving moral turpitude or the commission of any other act or omission involving misappropriation, unethical business conduct, disloyalty, fraud or breach of fiduciary duty; (B) inebriation, intoxication or the use of legal or illegal drugs while performing duties, which could reasonably be expected to, or which does, cause SG USA or any of its Affiliates public disgrace or disrepute or economic harm; (C) repeated failure to perform duties as reasonably directed by the SG USA Board or any officer to whom Tom Santoni reports; (D) gross negligence or willful misconduct with respect to SG USA or any of its subsidiaries or Affiliates or in the performance of Tom Santoni's duties to SG USA and its subsidiaries and Affiliates; (E) obtaining any personal profit not thoroughly disclosed to and approved by the SG USA Board in connection with any transaction entered into by, or on behalf of, SG USA or any of its subsidiaries; (F) violating any of the terms of SG USA's or any of its subsidiaries' established rules or policies which, if curable, is not cured to the SG USA Board's reasonable satisfaction within fifteen (15) days after written notice thereof to Tom Santoni; or (G) any material breach of any agreement between the Tom Santoni and SG USA or any of its subsidiaries which, if curable, is not cured to the SG USA Board's reasonable satisfaction within fifteen (15) days after written notice thereof to Tom Santoni or any act, omission, course of conduct, circumstances or facts which constitute just

cause or "serious reason" to terminate employment without prior notice or payment in lieu thereof pursuant to applicable law.

(b) "**Fair Market Value**" shall mean, with respect to the Tom Santoni Units, the fair market value of the Tom Santoni Units as of the Termination of Tom Santoni's employment with SG USA or its subsidiaries, as reasonably determined in good faith by the GP Board.

(c) "**Good Reason**" shall mean with respect to Tom Santoni, (i) "Good Reason" as such term is defined in the Tom Santoni Employment Agreement; or (ii) in the absence of such definition: (A) the failure of SG USA or one of its subsidiaries to pay any compensation to Tom Santoni when due and payable; (B) a reduction in Tom Santoni's base salary or a material reduction of Tom Santoni's benefits or opportunities for bonuses; (C) a relocation of Tom Santoni's principal office more than fifty (50) miles from any principal office of SG USA; provided, that Tom Santoni has not approved of such relocation; (D) a material reduction in title or duties without Tom Santoni's prior written consent, such consent not to be unreasonably withheld; and (E) SG USA's material breach of the Tom Santoni Employment Agreement or any other employment agreement entered into with Tom Santoni, if any; provided, however that (x) any of the foregoing clauses of this definition of "Good Reason" shall only constitute "Good Reason" during the ninety (90) day period following the date such clause(s) are triggered (after which it shall be deemed waived by Tom Santoni if prior thereto Tom Santoni has not exercised his right to resign for "Good Reason"); and (y) clauses (A), (B), (C) and (D) shall not constitute "Good Reason" when it is an isolated action not taken in bad faith and that is remedied promptly after written notice thereof by Tom Santoni to SG USA or if SG USA otherwise cures the condition that constituted Good Reason within thirty (30) days of Tom Santoni's notice of the existence of Good Reason.

(d) "**GP Board**" shall mean the board of managers of the General Partner or a duly authorized committee thereof.

(e) "**Pro Rata Interest**" of BWF LP or YPF LP, as applicable, shall mean BWF LP's or YPF LP's pro rata ownership percentage of the aggregate number of Units then outstanding which are held by both BWF LP and YPF LP, calculated by dividing the number of Units held by BWF LP or YPF LP, as applicable, by the total outstanding Units held by both BWF LP and YPF LP, expressed as a percentage.

(f) "**SG USA**" shall mean The State Group Industrial (USA) Limited, or any successor thereto.

(g) "**SG USA Board**" shall mean the board of managers of SG USA or a duly authorized committee thereof.

(h) "**Tom Santoni Employment Agreement**" shall mean the employment agreement dated November 1, 2018 between Tom Santoni and SG USA.

2. <u>Repurchase Rights</u>.

    (a)    <u>General</u>. Upon the termination of Tom Santoni's employment with SG USA by:

        (i)    SG USA, for any reason, whether with or without Cause; or

        (ii)    Tom Santoni, for Good Reason,

        (each, a "**Termination**")

BWF LP and YPF LP will have the option to purchase the Class A Units held by Tom Santoni or one or more of his Permitted Transferees (the "**Tom Santoni Units**") pursuant to the terms and conditions set forth in this <u>Section 2</u>.

    (b)    <u>Principal Partners' Option</u>. BWF LP and YPF LP (each a "**Principal Partner**" and collectively, the "**Principal Partners**") may elect to purchase its Pro Rata Interest of the Tom Santoni Units (excluding, for purposes of calculating such Principal Partner's Pro Rata Interest, the outstanding Class A Units held by Limited Partners other than the Principal Partners) pursuant to this <u>Section 2</u>, by giving written notice to Tom Santoni or his Permitted Transferees within **[60]** days following the Termination. Such notice will set forth the number, type and allocation of the Tom Santoni Units to be acquired by the Principal Partners from Tom Santoni or his Permitted Transferees, the aggregate consideration to be paid for the Tom Santoni Units, and the time and place for the closing of such purchase.

    (c)    <u>Repurchase Option</u>.

        (i)    If for any reason any one of the Principal Partners does not elect to purchase the Tom Santoni Units pursuant to <u>Section 2(b)</u> (such Principal Partner, a "**Non-Electing Partner**"), then (i) the Principal Partner that elects to purchase its Pro Rata Interest of the Tom Santoni Units (such Principal partner, an "**Electing Partner**") shall have the option to purchase the Non-Electing Partner's Pro Rata Interest of the Tom Santoni Units pursuant to this <u>Section 2</u>, by giving written notice to the Non-Electing Partner and Tom Santoni or his Permitted Transferees within **[90]** days following the Termination. Such notice will set forth the number and type of the Tom Santoni Units to be acquired by the Electing Partner from Tom Santoni or his Permitted Transferees, the aggregate consideration to be paid for the Tom Santoni Units, and the time and place for the closing of such purchase.

        (ii)    If for any reason the Principal Partners both elect not to purchase all of the Tom Santoni Units pursuant to <u>Section 2(b)</u> and <u>Section 2(c)(i)</u>, then the Partnership (or its designee) will, within **[180]** days following the Termination, purchase all of the Tom Santoni Units by giving written notice to the Principal Partners and Tom Santoni or his Permitted Transferees. Such notice will set forth the number and type of the Tom Santoni Units to be acquired by the Partnership from Tom Santoni or his Permitted Transferees, the aggregate consideration to be paid for the

Tom Santoni Units, and the time and place for the closing of such purchase.

(d) Purchase Price. The purchase price for the Tom Santoni Units (the "**Purchase Price**") will be the Fair Market Value of the Tom Santoni Units on the date of the Termination.

(e) Purchase Closing.

(i) If the Principal Partners or the Partnership (each a "**Purchaser**" and collectively, the "**Purchasers**") has elected to purchase the Tom Santoni Units, then (A) the applicable Purchasers or Purchaser shall notify Tom Santoni, prior to the Purchase Closing (as defined below) in reasonable detail of the method used by the GP Board to determine the Fair Market Value; and (B) the purchase of the Tom Santoni Units pursuant to this Section 2 will be completed (the "**Purchase Closing**") at the General Partner's principal office, at 10:00 a.m., on the 30th day following the date the applicable Purchasers or Purchaser provide notice to Tom Santoni that the applicable Purchasers or Purchaser are purchasing the Tom Santoni Units or on such earlier day as designated by the applicable Purchasers or Purchaser, in their sole discretion, upon not less than ten days prior notice to Tom Santoni. If such date is not a Business Day, then the Purchase Closing will occur at the same time and place on the next succeeding Business Day.

(ii) The applicable Purchasers or Purchaser will pay for the Tom Santoni Units, at their respective proportions (if applicable), by (i) delivery of a cashier's check or wire transfer of immediately available funds; or (ii) setoff against any and all obligations (to the extent of such obligations) owed to the applicable Purchasers or Purchaser or any of its Affiliates by Tom Santoni.

(iii) The Principal Partners or any one Principal Partner, as the case may be, may rescind any exercise of its purchase rights under this Section 2 at any time prior to the Purchase Closing.

(iv) At the Purchase Closing, Tom Santoni and any Permitted Transferee shall deliver a certificate or certificates representing the Tom Santoni Units to be purchased, duly endorsed, or with transfer forms duly endorsed, for transfer, and such other documents as the applicable Purchasers or Purchaser may reasonably request. The applicable Purchasers or Purchaser will be entitled to receive customary representations and warranties, including as to ownership, title and authority to sell, from the holders of Tom Santoni Units regarding such sale, and to receive a copy of a release of claims against SG USA and its subsidiaries and Affiliates from Tom Santoni and such other evidence, including applicable inheritance and estate tax waivers, as may reasonably be necessary to effect the purchase of the Tom Santoni Units to be purchased pursuant to Section 2.

(f) <u>Failure to Deliver Units</u>.

    (i) If Tom Santoni or any Permitted Transferee fails to deliver certificates representing the Tom Santoni Units and such other documents as the applicable Purchasers or Purchaser may reasonably request on the scheduled Purchase Closing, then the applicable Purchasers or Purchaser may elect to deposit the consideration representing the Purchase Price of the Tom Santoni Units with a third party (which may be the General Partner's attorney, a bank or a financial institution), as escrow agent.

    (ii) In the event of the foregoing election (A) the Tom Santoni Units will be deemed for all purposes to have been transferred to the applicable Purchasers or Purchaser; (B) to the extent that the Tom Santoni Units are evidenced by certificates or other instruments, such certificates or other instruments will be deemed cancelled and the Partnership will issue new certificates or other instruments in the name of the applicable Purchasers or Purchaser; (C) the Partnership will make an appropriate notation in its Unit ledger to reflect the transfer of the Tom Santoni Units to the applicable Purchasers or Purchaser; and (D) the person obligated to sell the Tom Santoni Units will merely be a creditor with respect to the Tom Santoni Units, with the right only to receive payment of the Purchase Price, without interest, from the deposited funds.

    (iii) If, prior to the third anniversary of the scheduled Purchase Closing as determined pursuant to this <u>Section 2</u>, the proceeds of sale have not been claimed by Tom Santoni or other seller of the Tom Santoni Units, then the deposited funds (and any interest earned thereon) will be returned to the applicable Purchasers or Purchaser and the transferors whose Tom Santoni Units were so purchased will look solely to the applicable Purchasers or Purchaser thereof for payment of the Purchase Price, without interest.

    (iv) The escrow agent will not be liable for any action or inaction taken by it in good faith.

3. <u>Amendment</u>. This Letter Agreement shall be amended only by a written amendment executed by the parties hereto. This Letter Agreement constitutes a valid and binding agreement of the Partnership, BWF LP and YPF LP.

4. <u>Due Authorization and Survival</u>. By executing this Letter Agreement, each party represents and warrants to each other party that the representing party has duly authorized the execution, delivery and performance of this Letter Agreement.

5. <u>Binding Effect</u>. This Letter Agreement is a valid and binding agreement of the Partnership, BWF LP and YPF LP, and upon its acceptance by Tom Santoni as evidenced by the execution of this Letter Agreement, Tom Santoni (and its successors and assigns, as permitted by the terms hereof and of the Partnership Agreement).

6. <u>Conflicts / Entire Agreement</u>. This Letter Agreement supplements the Partnership Agreement and the Subscription Agreement and in the event of a conflict between the

Tor#: 3910260.3

Case 3:21-cv-00903   Document 1-3   Filed 12/03/21   Page 6 of 8 PageID #: 139

provisions of this Letter Agreement and the Partnership Agreement or the Subscription Agreement, the provisions of this Letter Agreement shall prevail. Except as set forth in the foregoing sentence, this Letter Agreement, the Partnership Agreement and the Subscription Agreement constitute the entire understanding among the parties with respect to the subject matter hereof and supersede all other prior agreements and understandings, both written and oral, among the parties or any of them with respect to the subject matter hereof and thereof.

7. <u>Assignment</u>. This Letter Agreement is solely for the benefit of the parties hereto, and will not be assignable by any party without the prior written consent of the other parties. Notwithstanding the foregoing, each of BWF LP and YPF LP may assign this Letter Agreement to its Permitted Transferees in accordance with a permitted assignment of its rights under the Partnership Agreement.

8. <u>Choice of Law</u>. This Letter Agreement shall be construed, interpreted and enforced in accordance with, and the respective rights and obligations of the parties shall be governed by, the laws of the Province of Ontario and the federal laws of Canada applicable in such province.

9. <u>Counterparts</u>. This Letter Agreement may be executed in multiple counterparts, each of which shall constitute an original and all of which taken together shall constitute one and the same agreement.

**[Remainder of page intentionally left blank.]**

If the above correctly reflects our understanding and agreement with respect to the foregoing matters, please so confirm by signing in the space below and returning this Letter Agreement to us.

Sincerely,

**THE STATE GROUP HOLDINGS PARTNERS LP**, by its general partner **THE STATE GROUP HOLDINGS PARTNERS GP LLC**

By: _____
    Name: Michael Ranson
    Title:  President

**BW CAYMAN AIV IV, L.P.**, by its general partner **BW CAYMAN AIV IV GP LP**, by its general partner **BW CAYMAN GP AIV IV LLC**

By: _____
    Name: Adam Blumenthal
    Title:  Manager

**YP BUILDERS LIMITED PARTNERSHIP**, by its general partner **YELLOW SG GP CORP.**

By: _____
    Name: Tyler Smyrski
    Title:  Director

Accepted and Agreed:

SIGNED, SEALED & DELIVERED
in the presence of:

_____        _____
        Witness                                                             Tom Santoni