Exhibit 4

# SECONDMENT AGREEMENT

THIS SECONDMENT AGREEMENT (the "**Agreement**") is made as of the 17th day of December, 2018.

B E T W E E N:

> **STATE GROUP INDUSTRIAL (USA) LIMITED,**
> a corporation existing under the laws of the
> State of Delaware,
>
> (hereinafter referred to as the "**Lending Employer**"),
>
> - and -
>
> **THE STATE GROUP INC.,**
> a corporation existing under the laws of Canada,
> (hereinafter referred to as the "**Receiving Employer**"),

WHEREAS Tom Santoni (the "**Secondee**") is an employee of the Lending Employer who provides services to the Receiving Employer's business (the "**Business**");

AND WHEREAS the Receiving Employer desires that the Lending Employer second the Secondee from time to time during the Secondment Term to provide services to the Receiving Employer in connection with the operation of the Business from the date hereof and the Lending Employer is willing to second the Secondee to the Receiving Employer;

AND WHEREAS the Secondee has agreed that he will provide the services in connection with the Business under the direction and management of the Receiving Employer, for the Secondment Term (as defined below) set forth in this Agreement and on the terms and conditions set forth herein;

NOW THEREFORE THIS AGREEMENT WITNESSES THAT in consideration of the respective covenants and agreements of the Parties herein contained and for other good and valuable consideration (the receipt and sufficiency of which are expressly acknowledged by each Party), the Parties hereby covenant and agree as follows:

## ARTICLE 1
## INTERPRETATION

1.1        **Definitions**

As used herein, the following terms shall have the respective meanings indicated below:

"**Compensation**" has the meaning specified in Section 4.1(a);

"**Party**" means the Receiving Employer or the Lending Employer, as the context may indicate, and "**Parties**" means, collectively, and as the context requires, the Receiving Employer and the Lending Employer;

"**Representatives**" means the partners, directors, officers, employees, agents, consultants, distributors or outsourcers of a Party or any of its Affiliates; provided, however, that the Receiving Employer shall be deemed to not be a Representative of the Lending Employer, and the Lending Employer shall be deemed to not be a Representative of the Receiving Employer for the purposes of this Agreement; and

"**Secondment Term**" has the meaning given to such term in Section 5.1 of this Agreement.

## 1.2 Rules of Construction

Except as may be otherwise specifically provided in this Agreement and unless the context otherwise requires, in this Agreement:

(a)     the terms "Agreement", "this Agreement", "the Agreement", "hereto", "hereof", "herein", "hereby", "hereunder" and similar expressions refer to this Agreement in its entirety and not to any particular provision hereof;

(b)     references to an "Article", "Section" or "Schedule" followed by a number or letter refer to the specified Article or Section of or Schedule to this Agreement;

(c)     the division of this Agreement into Articles and Sections and the insertion of headings are for convenience of reference only and shall not affect the construction or interpretation of this Agreement;

(d)     words importing the singular number only shall include the plural and vice versa and words importing the use of any gender shall include all genders;

(e)     the word "including" is deemed to mean including without limitation;

(f)     any reference to this Agreement means this Agreement as amended, modified, replaced or supplemented from time to time;

(g)     any time period within which a payment is to be made or any other action is to be taken hereunder shall be calculated excluding the day on which the period commences and including the day on which the period ends but for greater certainty, this rule does not apply to the calculation of reimbursement for the work performed under Article 4;

(h)     whenever any payment is required to be made, action is required to be taken or period of time is to expire on a day other than a Business Day, such payment shall be made, action shall be taken or period shall expire on the next following Business Day;

(i)     all dollar amounts refer to Canadian dollars; and

(j)    a reference to any statute is to that statute as now enacted or as the same may from time to time be amended, re-enacted or replaced and includes any regulations made thereunder.

## 1.3    Severability

If any provision of this Agreement is determined by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect, all other provisions of this Agreement shall nevertheless remain in full force and effect so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party hereto.  Upon such determination that any term or other provision is invalid, illegal or incapable of being enforced, the Parties hereto shall negotiate in good faith to modify this Agreement so as to effect the original intent of the Parties hereto as closely as possible in an acceptable manner to the end that transactions contemplated hereby are fulfilled to the extent possible.

## 1.4    Entire Agreement

This Agreement constitutes the entire Agreement between the Receiving Employer and the Lending Employer with respect to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether written or oral.

## 1.5    Amendments and Waivers

(a)    No amendment or waiver of any provision of this Agreement shall be binding on any Party unless consented to in writing by such Party.  No waiver of any provision of this Agreement shall constitute a waiver of any other provision, nor shall any waiver of any provision of this Agreement constitute a continuing waiver unless otherwise expressly provided.

(b)    Any waiver by any Party of the strict observance, performance or compliance with any term, covenant, condition or agreement herein contained shall be deemed not to be a waiver of any subsequent default.  No waiver shall be inferred from or implied by any failure to act or delay in acting by either Party in respect of any default or by anything done or omitted to be done by the other Party.

## 1.6    Governing Law and Submission to Jurisdiction

(a)    This Agreement shall be construed, interpreted and enforced in accordance with, and the respective rights and obligations of the Parties shall be governed by, the laws of the Province of Ontario and the federal laws of Canada applicable therein.

(b)    Each of the Parties irrevocably and unconditionally (i) submits to the exclusive jurisdiction of the courts of the Province of Ontario over any action or proceeding arising out of or relating to this Agreement, (ii) waives any objection that it might otherwise be entitled to assert to the jurisdiction of such courts, and (iii) agrees not to assert that such courts are not a convenient forum for the determination of any such action or proceeding.

## ARTICLE 2
## SERVICES OF THE SECONDEE

### 2.1      Duties

The Parties agree that, during the Secondment Term, the Lending Employer shall, provide the services of the Secondee to the Receiving Employer on an exclusive basis, under the direct control, management and supervision of the Receiving Employer, to perform such duties and to provide such services at such times and such places as the Receiving Employer may from time to time reasonably require in connection with the Business, to carry out such reasonable directions as may be given to them from time to time by the Receiving Employer in connection with the Business and to act in accordance with and subject to the reasonable instructions of the Receiving Employer in accordance with applicable Laws.

### 2.2      Consent

The Secondee consents to providing the services to the Receiving Employer in accordance with this Agreement.

## ARTICLE 3
## SUPPORTING MATERIALS

### 3.1      Books and Records

The Receiving Employer agrees that it will preserve all books and records relating to this Agreement, including all such accounts, invoices and other records relating to the amounts paid or payable by the Receiving Employer to the Lending Employer, for a period of five years from the expiration or termination of the Secondment Term, or for such longer period as is required by any applicable Law or Governmental Authority of competent jurisdiction, and will permit the Lending Employer or its authorized Representatives reasonable access thereto upon request.

## ARTICLE 4
## COMPENSATION

### 4.1      Compensation

(a)      During the Secondment Term, the Receiving Employer shall be responsible and liable for, and shall pay to the Secondee, in accordance with its usual payroll practices, an amount equal to the applicable salary, wages, overtime pay, benefits premiums, perquisites, pension plan and other retirement compensation, bonuses, vacation pay, less the Employer's portion of statutory withholding remittances, related to the performance of services by the Secondee for the Receiving Employer or arising as a result of the secondment of the Secondee by the Lending Employer regardless of whether or not such amounts are incurred, paid or payable after the Secondment Term, without premium or reduction (collectively, the "**Compensation**").

(b)      The Receiving Employer shall be solely responsible for making all filings and payments with respect to income tax, harmonized sales tax, provincial sales tax, Canada Pension

Plan, employment insurance, employer health tax, workers' compensation and any other taxes, fees, costs or business license fees that are currently or may in the future be required by law with respect to Compensation paid by the Receiving Employer to the Secondee pursuant to this Agreement.

(c)     For certainty, any payments or compensation received by the Secondee from the Receiving Employer related to the performance of services pursuant to this Agreement shall not be considered or included for the purposes of the allocation of the profits interest by the Lending Employer.

**4.2**     **Vacation**

During the Secondment Term, the Receiving Employer shall permit the Secondee to take a total of that number of vacation days as he is entitled to and had scheduled prior to the effective date of the Secondment, provided the vacation is scheduled at a time that does not, in the opinion of the Receiving Employer, negatively impact the provision of services by the Secondee under this Agreement.   The Secondee shall not be entitled to any pay or other compensation from the Receiving Employer in respect of any vacation days not taken during the Secondment Term and any entitlement that the Secondee may have to pay or other compensation from the Lending Employer in lieu of vacation days not taken during the Secondment Term shall be in accordance with the terms and conditions of the of the Secondee's employment agreement with the Lending Employer.   Vacation pay accrued during a Secondment Term will be reimbursed to the Lending Employer by the Receiving Employer in accordance with Section 4.1 of this Agreement.

**4.3**     **Expenses**

Upon request, the Receiving Employer shall reimburse the Secondee for all reasonable travel, accommodation, living and other out-of-pocket expenses incurred by the Secondee in connection with the provision of the secondment services contemplated under this Agreement.

**ARTICLE 5**
**TERM AND TERMINATION**

**5.1**     **Term and Termination**

This Agreement shall commence on December 17, 2018 for a period of two (2) years, unless otherwise determined by the Parties (the **"Secondment Term"**). Upon the completion of the Secondment Term, this Agreement shall automatically renew on an annual basis unless either Party provides 60 days' written notice of termination of this Agreement to the other Party. Any outstanding payment obligations shall survive the termination of this Agreement.

**5.2**     **Survival**

(a)     The termination or expiration of this Agreement shall not affect or prejudice any Party's rights or obligations, or any Party's obligation to make or right to receive any amounts

which have accrued or arisen under this Agreement prior to the time of termination or expiration and all such rights and obligations shall survive the termination or expiration of this Agreement.

(b)     Notwithstanding termination for any reason whatsoever, Article 6 and this Section 5.2 hereof shall survive for as long as necessary to effectuate their purposes and shall bind the Parties and their representatives, successors and assigns.

## ARTICLE 6
## INDEMNIFICATION

### 6.1     Indemnification

(a)     The Receiving Employer shall indemnify and hold harmless the Lending Employer, and its partners, directors, officers, employees, consultants and agents (each a "**Lending Employer Indemnified Party**") from and against any and all losses, claims, damages, liabilities, costs and reasonable expenses (including any investigatory, legal and other expenses incurred in connection with, and any amounts paid in, any settlement) ("**Losses**") resulting from a demand, claim, lawsuit, action or proceeding arising out of a breach by the Receiving Employer of Applicable Law or this Agreement, in each case, in connection with the provision of services by the Secondee under this Agreement.

(b)     To the extent that any Lending Employer Indemnified Party is not a party to this Agreement, the Lending Employer shall obtain and hold the rights and benefits of this section in trust for and on behalf of such person.

## ARTICLE 7
## GENERAL

### 7.1     Relationship

Except as expressly provided for herein, nothing in this Agreement shall constitute or be deemed to constitute a partnership, joint venture, or grant of a franchise between the Parties or to constitute any Party as agent for any other Party for any purpose and no Party shall have the right or authority under this Agreement to do any act, enter into any contract, make any representation, give any warranty, incur any liability or assume any obligation, whether express or implied, of any kind on behalf of the other Parties. The Receiving Employer and the Lending Employer will at all times remain independent contractors of each other and the Secondee will at all times remain the employee of the Lending Employer. The Receiving Employer is not and shall not be by virtue of this Agreement a successor employer to the Lending Employer.

### 7.2     Notice

(a)     Any notice or other communication required or permitted to be given hereunder shall be in writing and shall be delivered in person, transmitted by facsimile or by email or similar means of electronic communication or sent by registered mail, charges prepaid, addressed as follows:

(b)     if to the Receiving Employer:

**THE STATE GROUP INC.**

Attention: Doug Brown
3206 Orlando Drive
Mississauga, ON L4V 1R

if to the Lending Employer:

**STATE GROUP INDUSTRIAL (USA) LIMITED**

Attention: Steve Theodoru
13800 N. Hwy. 57
Evansville, IN 47725

if to the Secondee:

Tom Santoni
3611 St. Tropez Way
Houston, TX 77082

(c)     Any such notice or other communication shall be deemed to have been given and received on the day on which it was delivered or transmitted (or, if such day is not a Business Day of if delivery or transmission is made on a Business Day after 5:00 p.m. at the place of receipt, then on the next following Business Day) or, if mailed, on the third Business Day following the date of mailing, provided however, that if at the time of mailing or within three Business Days thereafter there is or occurs a labour dispute or other event which might reasonably be expected to disrupt the delivery of documents by mail, any notice or other communication hereunder shall be delivered or transmitted by means of recorded electronic communication as aforesaid.

(d)     Any Party may at any time change its address for service from time to time by giving notice to the other Parties in accordance with this Section 7.2.

**7.3**       **<u>Further Assurances</u>**

Each of the Parties hereto will, at all times on or after the Closing Date and upon any reasonable request of the other, promptly do, execute, deliver or cause to be done, executed and delivered, at the expense of the requesting Party, all further acts documents and things as may be required or necessary for the purposes of giving effect to this Agreement, including such other instruments of sale, transfer, conveyance, assignment, confirmation, certificates and other instruments as may be reasonably requested in order to more effectively effectuate the transactions contemplated herein.

7.4    **Counterparts; Facsimile**

This Agreement and all documents contemplated by or delivered under or in connection with this Agreement may be executed and delivered in any number of counterparts, with the same effect as if all Parties had signed and delivered the same document, and all counterparts shall together constitute one and the same original document.

7.5    **Successors and Assigns**

This Agreement shall enure to the benefit of and be binding upon the Parties hereto and their respective successors and legal personal representatives. Neither the Receiving Employer nor the Lending Employer may assign this Agreement or any of its respective rights or obligations hereunder without the prior written consent of the Lending Employer or the Receiving Employer, as the case may be. In the event of an assignment permitted pursuant to the terms and conditions of this Section 7.5, this Agreement shall enure to the benefit of and be binding upon such assignee and its successors and legal personal representatives.

7.6    **No Third Party Beneficiaries**

This Agreement is solely for the benefit of the Parties hereto and, to the extent provided herein, their respective affiliates and no provision of this Agreement shall be deemed to confer upon any other third parties any remedy, claim, liability, reimbursement, cause of action or other right.

*[Signature page shall immediately follow this page.]*

IN WITNESS WHEREOF the Parties hereto have executed this Agreement as of the date first above written.

STATE GROUP INDUSTRIAL (USA) LIMITED

by _____

Name: Steve Theodoru

Title: Vice President


THE STATE GROUP INC.

by _____

Name: Doug Brown

Title: CFO


For the purposes of Section 2.2 and Article 4 of this Secondment Agreement:

SIGNED in the presence of:

_____          _____
            Witness                                      Tom Santoni

the date first above written.

STATE GROUP INDUSTRIAL (USA) LIMITED

by  _____
      Name:  Steve Theodoru
      Title:  Vice President

THE STATE GROUP INC.

by  _____
      Name:  Doug Brown
      Title:  CFO

For the purposes of Section 2.2 and Article 4 of this Secondment Agreement:

SIGNED in the presence of:

_____    _____
    Witness                  Tom Santoni