# Exhibit 5

**The State Group Holdings Partners LP**
**Class B Unit Grant Agreement**

December 21, 2018

Thomas Santoni
3611 St. Tropez Way
Houston, TX  77082

Re:  Grant of Class B Units in The State Group Holdings Partners LP

The State Group Holdings Partners LP (the "Company") is pleased to grant to you (the "Participant") all rights, title and interest in the ownership of 300 Class B Units of limited partnership interests in the Company (the "Class B Units").

Such Class B Units are subject to the terms and conditions set forth in this agreement (this "Agreement") and the Company's Amended and Restated Limited Partnership Agreement dated April 3, 2018, as it may be further as amended, modified, restated or supplemented from time to time (the "LP Agreement").

Capitalized terms used herein but not defined herein have the meanings set forth in Exhibit A hereto or otherwise given to such terms in the Company's LP Agreement, as the context requires.

1.  Issuance of Units.  Subject to the restrictions, terms and conditions of this Agreement, the Company hereby awards to the Participant the Class B Units.  Pursuant to Section 4 hereof, the Class B Units are subject to certain restrictions, which restrictions relate to the passage of time that the Participant serves as the Chief Executive Officer of The State Group Industrial (USA) Limited, an affiliate of the Company, reporting to the Board of Managers of The State Group Holdings GP LLC (the "General Partner").  While such restrictions are in effect, the Class B Units subject to such restrictions shall be referred to herein as "Restricted Units."

2.  Restricted Units.

    (a)  Rights with Regard to Class B Units.  The Class B Units shall have no voting rights.  The Participant shall have the right to receive and retain any distributions payable to holders of Class B Units, and to exercise all other rights, powers and privileges, and shall be subject to the liabilities and obligations, of a holder of Class B Units, with the exceptions that: (i) the Company (or its designated agent) will retain custody of any certificates or other items representing the Class B Units and the other Restricted Property (as defined below) until the Class B Units are fully vested; (ii) no Restricted Property shall bear interest or be segregated in separate accounts at any time; and (iii) any distributions will be subject to the restrictions provided in Section 3(b) and Section 4 and the terms of the Company's LP Agreement.

    (b)  Treatment of Distributions and Restricted Property.  In the event the Participant receives a distribution on the Restricted Units other than money, whether in securities or other property (collectively "Restricted Property"), the Participant will also immediately deposit with and deliver to the Company any of such Restricted Property, including any certificates representing shares duly endorsed in blank or accompanied by stock powers duly executed in blank, and such Restricted Property shall be subject to the same restrictions, including that of Section 4, as the Restricted Units with regard to which they are issued and shall herein be encompassed within the term "Restricted Units."

3. <u>Vesting</u>. The Restricted Units granted pursuant to <u>Section 1</u> above shall become vested and cease to be subject to the first sentence of <u>Section 3(b)</u> below as follows, provided that the Participant has not had a Termination any time prior to the applicable vesting date:

| Vesting Date | Percentage Vested |
|---|---|
| November 1, 2019 | 20% |
| November 1, 2020 | 40% |
| November 1, 2021 | 60% |
| November 1, 2022 | 80% |
| November 1, 2023 | 100% |

    (a) <u>Change of Control</u>. Immediately prior to and conditioned upon the closing of a Change of Control, all unvested Restricted Units shall become fully vested Class B Units.

    (b) <u>Forfeiture</u>. Except as provided in <u>Section 3(a)</u> above, the Participant shall forfeit to the Company, without compensation, any and all unvested Restricted Units and Restricted Property upon the Participant's Termination for any reason or no reason, whether or not such Termination is with or without notice or is with or without legal or just cause. The Participant shall have no claim to or in respect of any and all unvested Restricted Units and Restricted Property which may have or would have vested had due notice of Termination been given to the Participant nor shall the Participant have any entitlement to damages or other compensation or any claim for wrongful Termination in respect of any Restricted Units or Restricted Property or loss of profit which may have or would have vested or accrued to the Participant if such Termination had not occurred or if due notice of Termination had been given. The date of Termination shall be the earlier of the notice date or the actual date of such Termination and shall not include any notice period or pay in lieu of notice period.

4. <u>Company Transfer Restrictions</u>.

    (a) The Class B Units are subject to the restrictions on transfer and related provisions as provided in the Company's LP Agreement.

    (b) In addition to the foregoing, in the event of the Participant's Termination for Cause, as defined in the Employment Agreement between Thomas Santoni and The State Group Industrial (USA) Limited) dated November 1, 2018, the Company may at any time within one year after such Termination repurchase (or may cause its designee to purchase) from the Participant any or all vested Class B Units at a repurchase price equal to the Fair Market Value on the date of Termination. If the Company elects to exercise its rights under this <u>Section 4(b)</u>, it shall do so by delivering to the Participant a notice of such election, specifying the number of Class B Units to be purchased and the closing date and time. Such closing shall take place at the Company's principal executive offices. At such closing, the Company (or its designee) will pay the Participant the repurchase price as specified in this <u>Section 4(b)</u>, in cash, or by issuing a promissory note (such promissory note to have a term not exceeding three (3) years, bearing interest at the prime rate then in effect, and be payable in full upon a Change of Control of the Company) in favor of the Participant, or any combination of the foregoing.

5. <u>Ownership Rights/Dividends; Profits Interest</u>. The Participant acknowledges that the Participant's rights to receive distributions from the Company shall be limited to those distributions made by the Company in respect of the Class B Units. Furthermore, the Participant acknowledges that the Class B Units are intended to be treated as "profits interests." Accordingly, if (i) the Company's assets were sold for their respective Fair Market Values immediately after the date hereof, (ii) the Company was liquidated as of such date and its creditors paid, and (iii) the remaining assets of the Company were

distributed in accordance with the terms of the Company's LP Agreement, then no amounts would be distributable by the Company to the Participant in respect of the Class B Units. The Participant shall not be entitled to participate in any distribution under the Company's LP Agreement until the Company distributes an aggregate amount, to other holders of the Company's Units issued prior to the date hereof, equal to $53,375,000 (determined in United States currency) plus any additional capital contributions made to the Company after the date hereof, which the parties hereto agree is greater than or equal to the Fair Market Value of the Company on the date hereof.

6. <u>Withholding of Taxes; Section 83(b) Election</u>.

(a) The Company shall have the right to take any action as may be necessary or appropriate to satisfy any federal, state or local tax withholding obligations of the Company in connection with the Class B Units, including, but not limited to, the right to redeem Class B Units, with the proceeds of such redemption being used to satisfy such withholding obligation. In the event that the proceeds of such sale shall exceed the legally required withholding amount, the Company shall remit the difference in cash to the Participant. In the event that the proceeds of such sale are less than the legally required withholding amount, the Company and/or its Affiliates may withhold the difference from any cash or other amounts then or thereafter payable to the Participant. The Participant acknowledges that it is his or her sole responsibility, and not the Company's, to file timely and properly the election under Section 83(b) of the Code and any corresponding provisions of state tax laws if he or she elects to utilize such election.

(b) As a further condition to the grant of Class B Units under this Agreement, no later than thirty (30) days following the date hereof, the Participant shall file an election pursuant to Section 83(b) of the Code with respect to the Class B Units. The form for making this Section 83(b) election is attached to this Agreement as <u>Exhibit B</u>. The Participant shall promptly provide the Company with a copy of any such election that the Participant files or that is filed on behalf of the Participant, along with a copy of proof of mailing. The Participant should consult with the Participant's tax advisor to determine the tax consequences of acquiring the unvested Class B Units subject to this Agreement. The Participant acknowledges that it is the Participant's sole responsibility, and not that of the Company, to file a timely election under Section 83(b) of the Code, even if the Participant requests the Company or its representatives to make this filing on the Participant's behalf.

7. <u>Securities Representations</u>. Unless and until the Class B Units are registered pursuant to the Securities Act, the Company shall rely upon the following express representations and warranties of the Participant:

(a) The Participant is acquiring and will hold the Class B Units for investment for the Participant's account only and not with a view to, or for resale in connection with, any "distribution" thereof within the meaning of the Securities Act.

(b) The Participant has been advised that the Class B Units have not been registered under the Securities Act or other applicable securities laws on the grounds that no distribution or public offering of the securities is to be effected (it being understood, however, that the securities are being issued and sold in reliance on the exemption provided under Rule 701 promulgated under the Securities Act), and that such Class B Units must be held indefinitely, unless subsequently registered under the applicable securities laws or the Participant obtains an opinion of counsel (in the form and reasonably satisfactory to the Company and its counsel) that registration is not required. In connection with the foregoing, the Company is relying in part on the Participant's representations set forth in this <u>Section 7</u>. The Participant further acknowledges and understands that the Company is under no obligation hereunder to register such Class B Units.

3

#60394409_v4
Case 3:21-cv-00903   Document 1-5   Filed 12/03/21   Page 4 of 13 PageID #: 156

(c) The Participant is aware of the adoption of Rule 144 by the United States Securities and Exchange Commission under the Securities Act, which permits limited public resales of securities acquired in a non-public offering, subject to the satisfaction of certain conditions. The Participant acknowledges that the Participant is familiar with the conditions for resale set forth in Rule 144, and acknowledges and understands that the conditions for resale set forth in Rule 144 have not been satisfied and that the Company has no plans to satisfy these conditions in the foreseeable future.

(d) The Participant will not Transfer the Class B Units in violation of the Company's LP Agreement, this Agreement, the Securities Act (or the rules and regulations promulgated thereunder) or under any other applicable securities laws. The Participant agrees that the Participant will not dispose of such Class B Units unless and until the Participant has complied with all requirements of the Company's LP Agreement and this Agreement applicable to the disposition of such Class B Units.

(e) The Participant has been furnished with, and has had access to, such information as the Participant considers necessary or appropriate for deciding whether to invest in the Class B Units, and the Participant has had an opportunity to ask questions and receive answers from the Company regarding the terms and conditions of the issuance of such Class B Units.

(f) The Participant is aware that an investment in the Company is a highly speculative investment that has limited liquidity and is subject to the risk of complete loss. The Participant is able, without impairing the Participant's financial condition, to hold the Class B Units for an indefinite period and to suffer a complete loss of his investment in such Class B Units.

(g) The Participant agrees (i) that any certificate representing such Class B Units may bear such legend or legends as the Board deems appropriate in order to assure compliance with applicable securities laws and (ii) that the Company may refuse to register the transfer of the Class B Units acquired pursuant to this Agreement on the unit transfer records of the Company if such proposed transfer would, in the opinion of counsel satisfactory to Company, constitute a violation of any applicable securities law.

8. <u>Reorganization of the Company</u>. The existence of this Agreement shall not affect in any way the right or power of the Company, the General Partner or the partners to make or authorize any or all adjustments, recapitalizations, reorganizations or other changes in the Company's capital structure or its business; any merger or consolidation of the Company; any issuance of bonds, debentures, preferred or prior preference units ahead of or affecting the Class B Units or the rights thereof; the dissolution or liquidation of the Company; any sale or transfer of all or any part of its assets or business; or any other act or proceeding, whether of a similar character or otherwise (collectively, "<u>Actions</u>").

9. <u>Recapitalization Events</u>. In the event of distributions, spin-offs of assets or other extraordinary distributions, recapitalizations, mergers, consolidations, reorganizations, liquidations, issuances of rights or warrants and similar transactions or events involving the Company ("<u>Recapitalization Events</u>"), appropriate and equitable adjustments may be made with respect to the Class B Units, and for all purposes references herein to Class B Units shall mean and include all securities or other property (other than cash) that holders of Class B Units are entitled to receive in respect of Class B Units by reason of each successive Recapitalization Event, which securities or other property (other than cash) shall be treated in the same manner and shall be subject to the same restrictions as the underlying Class B Units, in each case, to the extent determined by the Board.

10. <u>Certain Restrictions</u>. By executing this Agreement, the Participant acknowledges that the Participant will enter into such further written representations, warranties and agreements and execute such documents as the Company may reasonably request in order to comply with the terms of this Agreement, the Company's LP Agreement, any securities laws or any other applicable laws, rules or regulations. The

4

Participant hereby (i) acknowledges that the Participant has read this Agreement and the Company's LP Agreement, (ii) accepts and agrees to become (or remain) a "Limited Partner" of the Company and be bound by the terms of the Company's LP Agreement directly, and (iii) agrees to execute and deliver to the Company a Counterpart Signature Page to the Company's LP Agreement in the form attached to this Agreement as Exhibit C.

11. No Obligation to Continue Employment. This Agreement does not guarantee that the Company or its Affiliates will employ or retain, or to continue to employ or retain the Participant during the entire, or any portion of the, term of this Agreement, including but not limited to any period during which the Class B Units are outstanding, nor does it modify in any respect the Company or its Affiliate's right to terminate or modify the Participant's employment as the Chief Executive Officer of The State Group Industrial (USA) Limited, an affiliate of the Company or compensation.

12. Irrevocable Proxy and Power of Attorney. The Company, its successors and assigns, is hereby appointed the proxy and attorney-in-fact, with full power of substitution and resubstitution, of the Participant for the purpose of carrying out the provisions of this Agreement and taking any action and executing any instruments which such proxy and attorney-in-fact may deem necessary or advisable to accomplish the purposes hereof. The Company, as proxy and attorney-in-fact for the Participant, may in the name and stead of the Participant, make and execute all conveyances, assignments and transfers of the Class B Units and property provided for herein, and the Participant hereby ratifies and confirms all that the Company, as said attorney-in-fact, shall do by virtue hereof. Nevertheless, the Participant shall, if so requested by the Company, execute and deliver to the Company all such instruments as may, in the judgment of the Company, be advisable for such purpose. Each of the proxy and power of attorney granted pursuant to this Section 12 is given in consideration of the agreements and covenants of the Company in connection with the transactions contemplated by this Agreement and, as such, each is coupled with an interest and shall be irrevocable. The Participant hereby revokes any and all previous proxies or powers of attorney with respect to the Class B Units and shall not hereafter, unless and until this Agreement terminates, purport to grant any other proxy or power of attorney with respect to any of the Class B Units, deposit any of the Class B Units into a voting trust or enter into any agreement (other than this Agreement), arrangement or understanding with any person, directly or indirectly, to vote, grant any proxy or give instructions with respect to the voting of any of the Class B Units, in each case, with respect to any of the matters set forth herein.

13. Miscellaneous.

(a) This Agreement may not be amended, waived or discharged except by a writing signed by the Company and the Participant.

(b) Any notices permitted or required hereunder may be given in the manner set forth in the Company's LP Agreement.

(c) This Agreement shall be binding upon and shall inure to the benefit of the respective heirs, successors, permitted assigns and legal representatives of the parties hereto.

(d) In the event that any provision of this Agreement shall be held illegal, invalid or unenforceable for any reason, such provision shall be fully severable and shall not affect the remaining provisions of this Agreement, and this Agreement shall be construed and enforced as if the illegal, invalid or unenforceable provision had never been included herein.

(e) The Participant agrees to execute such further documents and take such other actions as may be permitted or required by law to implement the purposes, objectives, terms, and provisions of this Agreement.

(f) The failure of any party hereto at any time to require performance by another party of any provision of this Agreement shall not affect the right of such party to require performance of that provision, and any waiver by any party of any breach of any provision of this Agreement shall not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any right under this Agreement.

(g) Any matter, dispute, claim or controversy arising out of or related to this Agreement shall be construed by, subject to and governed in accordance with the internal laws of the State of Delaware without giving effect to conflict of laws or other principles which would result in the application of laws other than the internal laws of the State of Delaware. Because the Participant is a citizen of the United States, the parties hereto agree to the foregoing governing law provision notwithstanding that the Company's LP Agreement is governed by the laws of the Province of Ontario and the federal laws of Canada applicable to that province.

(h) This Agreement may be executed in one or more counterparts, all of which taken together shall constitute one contract.

*(Signature page to follow)*

6

Please sign below to confirm you are in agreement with this Agreement.

Sincerely,

**THE STATE GROUP HOLDINGS PARTNERS LP**

By: The State Group Holdings GP LLC, its General Partner

By: _____
Name: Michael Ranson
Title: President

[Signature Page –Class B Unit Grant Agreement]

Agreed and accepted:

_____
Thomas Santoni

[Signature Page –Class B Unit Grant Agreement]
#60394409_v4
Case 3:21-cv-00903   Document 1-5   Filed 12/03/21   Page 9 of 13 PageID #: 161

Exhibit A

# Certain Definitions

1. "Change of Control" means the occurrence of any of the following events: (i) any "person" or "group" (as such terms are used in Section 13(d) and Section 14(d) of the Securities Exchange Act of 1934, as amended), other than a corporation owned directly or indirectly by the members of the Company in substantially the same proportions as their ownership of Units of the Company, is or becomes the "beneficial owner" (as defined in Rule 13d-3 under said Act), directly or indirectly, of securities of the Company representing more than 50% of the total voting power represented by the Company's then outstanding voting securities, (ii) the Company merges or consolidates with any other entity, other than a merger or consolidation which would result in the voting securities of the Company outstanding immediately prior thereto continuing to represent (either by remaining outstanding or by being converted into voting securities of the surviving entity) a majority of the total voting power represented by the voting securities of the Company or such surviving entity outstanding immediately after such merger or consolidation, (iii) the sale or disposition by the Company, in one transaction or a series of transactions, of all or substantially all the Company's assets, or (iv) the dissolution, liquidation or winding up of the Company.

2. "Code" means the Internal Revenue Code of 1986, as amended. Any reference to any section of the Code shall also be a reference to any successor provision and any Treasury Regulation promulgated thereunder.

3. "Fair Market Value" means the value of any specific assets of the Company or the Company or the Class B Units, as applicable, determined as if the Company was sold to a third party purchaser in an arm's length transaction in which such purchaser purchased all of the outstanding equity interest in the Company for a purchase price equal to the value of the entire business and operations of the Company as a going concern (including good will), and the proceeds of such sale were distributed in accordance with the applicable provisions of the Company's LP Agreement. Fair Market Value shall be determined in good faith by the General Partner, in writing, which it shall provide to Participant with appropriate supporting documentation.

4. "Securities Act" means the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder. Any reference to any section of the Securities Act shall also be a reference to any successor provision.

"Termination" means any termination, whether voluntary or involuntary, of Participant's employment as the Chief Executive Officer of The State Group Industrial (USA) Limited, an affiliate of the Company.

<u>Exhibit B</u>

**Election Under Section 83(B) of the
Internal Revenue Code of 1986, as Amended**

# THE FORM FOR MAKING THIS SECTION 83(B) ELECTION IS ATTACHED BELOW.

# YOU MUST FILE THIS FORM WITHIN 30 DAYS OF PURCHASING THE APPLICABLE UNITS.

# YOU (AND NOT THE COMPANY OR ANY OF ITS AGENTS) SHALL BE SOLELY RESPONSIBLE FOR FILING SUCH FORM WITH THE IRS, EVEN IF YOU REQUEST THE COMPANY OR ITS AGENTS TO MAKE THIS FILING ON YOUR BEHALF AND EVEN IF THE COMPANY OR ITS AGENTS HAVE PREVIOUSLY MADE THIS FILING ON YOUR BEHALF.

**The election should be filed by mailing a signed election form by certified mail, return receipt requested to the IRS Service Center where you file your tax returns. See *www.irs.gov*.**

[Exhibit B - Class B Unit Grant Agreement]

#60394409_v4

# Election Under Section 83(B) of the
# Internal Revenue Code of 1986, as Amended

The undersigned taxpayer hereby elects, pursuant to Section 83(b) of the Internal Revenue Code of 1986, as amended, to include in his or her gross income for the current taxable year, the amount of any compensation taxable to him or her in connection with his or her receipt of the property described below:

1. The name, address, taxpayer identification number and taxable year of the undersigned are as follows:

NAME OF TAXPAYER: Thomas Santoni

NAME OF SPOUSE:

TAXPAYER'S ADDRESS: 3611 St. Tropez Way
Houston, TX 77082

TAXPAYER ID #:

SPOUSE'S TAXPAYER ID #:

2. The property with respect to which the election is made is described as follows: 300 Class B Units (the "Units") of The State Group Holdings Partners LP (the "Company").

3. The date on which the property was transferred is: December 21, 2018.

4. The property is subject to the following restrictions: The Units may be repurchased by the Company, or its assignee, upon the occurrence of certain events. This right lapses with regard to a portion of the Units over time.

5. The fair market value at the time of transfer, determined without regard to any restriction other than a restriction which by its terms will never lapse, of such property is: **$0.00**.

6. The amount, if any, paid for such property: **$0.00**.

The undersigned has submitted a copy of this statement to the person for whom the services were performed in connection with the undersigned's receipt of the above-described property. The transferee of such property is the person performing the services in connection with the transfer of said property.

The undersigned understand(s) that the foregoing election may not be revoked except with the consent of the Commissioner.

Dated: _____    _____
                                  Thomas Santoni, Taxpayer

The undersigned spouse of taxpayer joins in this election.

Dated: _____    _____
                                  Spouse of Taxpayer

[Exhibit B - Class B Unit Grant Agreement]

Exhibit C

**Counterpart Signature Page to the Company LP Agreement**

Reference is made to that certain Amended and Restated Limited Partnership Agreement of The State Group Holdings Partners LP, a limited partnership formed under the laws of the Province of Ontario, Canada (the "**Company**"), dated as of April 3, 2018, by and among the Company and its unit holders, which is attached hereto as **Annex 1** (as amended or restated from time to time, the "**Company LP Agreement**"). Capitalized terms used herein without definition shall have the meanings assigned to them in the Company LP Agreement.

The undersigned hereby: (a) acknowledges that he or she has received and reviewed a complete copy of the Company LP Agreement and (b) agrees that upon execution of this Counterpart Signature Page and subject to the Company's acceptance hereof (indicated by the Company countersigning this Counterpart Signature Page and delivering a copy thereof to the undersigned), the undersigned will become a party to the Company LP Agreement as a "Limited Partner" holding Class B Units, will be fully bound by, and subject to, all of the Company LP Agreement's terms, as though an original party to the Company LP Agreement, and will be admitted as a "Limited Partner" holding Class B Units for all purposes of the Company LP Agreement and entitled to all the rights and subject to all the duties incidental thereto. The undersigned is executing this counterpart as a holder of Class B Units even if the holder is already a party to the Company LP Agreement.

The laws of the Province of Ontario, Canada, without regard to any principle of choice of law that would permit or require the application of the laws of any other jurisdiction, exclusively governs this Counterpart Signature Page.

**IN WITNESS WHEREOF,** the undersigned has executed this Counterpart Signature Page as of December 21, 2018.

Signed By: _____

Printed Name: Thomas Santoni

Address: 3611 St. Tropez Way

Houston, TX 77082

The undersigned authorized general partner of The State Group Holdings Partners LP, through its authorized officer, hereby approves this Counterpart Signature Page.

**THE STATE GROUP HOLDINGS PARTNERS LP**

By: The State Group Holdings GP LLC, its General Partner

By: _____
Name: Michael Ranson
Title: President

[Exhibit C - Class B Unit Grant Agreement]